RECEIPT #_____
AMOUNT $_____
SUMMONS ISSUED_____
LOCAL RULE 4.1_____
WAIVER FORM_____
MCF ISSUED_____
BY DPTY. CLK._____
DATE_____

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

THOMAS F. REILLY, Attorney General
of the Commonwealth of Massachusetts,

    Plaintiff,

    v.

UNITED STATES ENVIRONMENTAL
PROTECTION AGENCY,

    Defendant.

)
)
)
)
)
)
)
)
)
)
)
)

CIVIL ACTION NO.

**05 - 10450 RCL**

**COMPLAINT**

MAGISTRATE JUDGE_____

1. The Plaintiff brings this action pursuant to the federal Freedom of Information Act, ("FOIA"), 5 U.S.C. § 552, as amended, seeking an order requiring defendant Environmental Protection Agency ("EPA") to produce improperly withheld agency records. In particular, this case seeks an order from the court requiring EPA to release certain documents relating to the regulation of mercury emissions from power plants.

### I. JURISDICTION AND VENUE

2. The Court has jurisdiction over this action pursuant to FOIA § 552(a)(4)(B), 7 U.S.C. §§ 701-706 (APA), 28 U.S.C. § 1331 (federal question jurisdiction), and 28 U.S.C. § 1346 (United States as a defendant).

3. Plaintiff resides and has his principal place of business in this judicial district. Venue in this Court is proper pursuant to 5 U.S.C. § 552(a)(4)(B) and 28 U.S.C. § 1391(e).

## II. PARTIES

4.      Plaintiff Thomas F. Reilly is the Attorney General of Massachusetts. Access to agency documents is essential to Mr. Reilly's work, and to the public's right to know about EPA's administration of the Clean Air Act ("CAA") as it relates to mercury emissions. Mr. Reilly is the requester of the withheld record.

5.      Defendant EPA is an agency of the United States. EPA has possession of and control over the records that plaintiff seeks.

## III. STATEMENT OF FACTS

6.      EPA is in the process of developing regulations to control the emission of mercury from power plants. EPA announced its proposed regulations on December 15, 2003, and published them on January 30, 2004. Notice of Proposed Rulemaking: *Proposed National Emission Standards for Hazardous Air Pollutants; and, in the Alternative, Proposed Standards of Performance for New and Existing Stationary Sources: Electric Utility Steam Generating Units*, 69 Fed. Reg. 4652 (January 30, 2004) ("NPRM").

7.      The NPRM proposes alternative regulatory approaches to controlling mercury emissions from power plants: establishment of an emissions standard or standards based on maximum achievable control technology (MACT), in accordance with CAA § 112, 42 U.S.C. § 7412, or, alternatively, new source performance standards coupled with a "cap and trade" system under CAA § 111, 42 U.S.C. § 7411. The NPRM expresses a preference for the latter approach based among other things on the EPA's proposed conclusion that this approach would yield comparable or better reductions in total mercury emissions within the same time frame in a more cost-effective manner than establishment of MACT standards.

2

8.     Pursuant to the Unfunded Mandates Reform Act, Pub. L. No. 104-4, 109 Stat. 48,

codified at 2 U.S.C. §§ 1501 *et seq.*, EPA is required to perform and publish "a qualitative and

quantitative assessment of the anticipated costs and benefits" of any proposed regulatory action

that may result in expenditures by state and local government or industry of at least $100 million

in any year.  2 U.S.C. § 1532.

9.     Pursuant to Executive Order 12866, 58 Fed. Reg. 51735 (October 4, 1993), EPA

is required to perform "[a]n assessment, including the underlying analysis, of costs and benefits

of potentially effective and reasonably feasible alternatives" to a proposed significant regulatory

action, whether those alternatives are identified by the agencies or the public; and must provide

"an explanation why the planned regulatory action is preferable to the identified potential

alternatives."  E.O. 12866, § 6(a)(3)(C).  The Office of Management and Budget (OMB) "Best

Practices Guidances" under E.O. 12866 states among other things that:

> Analysis of the risks, benefits, and costs associated with regulation must be
> guided by the principles of full disclosure and transparency. Data, models,
> inferences, and assumptions should be identified and evaluated explicitly, together
> with adequate justifications of choices made, and assessments of the effects of
> these choices on the analysis. The existence of plausible alternative models or
> assumptions, and their implications, should be identified. In the absence of
> adequate valid data, properly identified assumptions are necessary for conducting
> an assessment.

OMB, *Economic Analysis of Federal Regulations Under Executive Order 12866*, Introduction

(January 11, 1996), available at http://www.whitehouse.gov/omb/inforeg/riaguide.html.

10.     In assessing the costs and effects of alternative regulatory approaches on mercury

emissions, the NPRM relies upon forecasts of industry decisionmaking under various scenarios

that are outlined in the NPRM itself and on the EPA website (http://www.epa.gov/-

airmarkets/epa-ipm/index.html). To prepare the forecasts for the NPRM, EPA employed a proprietary computerized model known as the Integrated Planning Model ("IPM").

11.    As explained by EPA in an April, 2002, presentation, EPA primarily uses IPM to analyze national and regional approaches to pollution control over a 15 to 20 year period. EPA has used IPM to develop rules, such as the NOx SIP Call, a revised national air quality standard for ozone, and utility cooling water standards; to evaluate the effects of the 1990 Clean Air Act Amendments on the utility industry; to analyze the environmental impacts of utility industry restructuring; to investigate CO2 reduction strategies; and to evaluate multi-pollutant controls. EPA, *Integrated Planning Model (IPM): What It Is, Who Uses It, How It Works, What It Can Show You*, published at http://www.epa.gov/ttn/atw/combust/utiltox/ toxpg530.html#CAAAC.

12.    There has been substantial public controversy over EPA's pending proposal. Attorney General Reilly gave testimony against the proposal at a public hearing in Philadelphia on February 25, 2004. Together with several other state attorneys general, Attorney General Reilly submitted a detailed set of follow-up comments on June 28, 2004.

13.    One aspect of the controversy regarding the proposed rule concerns EPA's failure to perform additional modeling of the impact of the various proposals on the electricity generating sector to test alternative assumptions and control levels. EPA itself early in the rulemaking process acknowledged the need to do additional runs. At a June 3, 2002 meeting of a subcommittee of the Clean Air Act Advisory Committee, known as the Utility MACT Working Group ("Working Group"), and at other times, EPA agreed to perform and present additional IPM runs using assumptions ("inputs") proposed by the Working Group. A true copy of a June 18, 2002, memorandum of the Working Group reflecting this agreement is attached hereto as Exhibit A.

4

14.    EPA has placed in the record the results of those IPM "runs" on which it proposes to rely as well as the assumptions it made in providing inputs to the IPM for those runs. Without explanation, however, EPA never published the additional runs requested by the Working Group (whether it prepared them or not), but instead disbanded the Working Group.

15.    On or about March 19, 2004, Attorney General Reilly filed a FOIA request seeking information about the additional IPM runs. *See* FOIA Request HQ-RIN-01035-04, attached hereto as Exhibit B. Specifically, the request seeks:

> All records relating to the use of the Integrated Planning Model (IPM) in connection with the impact on the electricity generating and fossil fuel industries of proposed EPA standards for the emission of mercury from power plants, including but not limited to any communications about whether to undertake IPM modeling runs, and any discussions about the actual or anticipated results of such runs, and the results of any modeling runs actually performed (other than those results already disclosed to the Working Group for the Utility MACT formed under the Clean Air Act Advisory Committee Subcommittee for the Permits/New Source Reviews/Toxics).

16.    By letter dated June 10, 2004 (but mailed a week or more later) from Sam Napolitano, Director, Clean Air Markets Division, Office of Air & Radiation, US EPA, Washington, D.C. 20460, EPA responded to the FOIA request. In its response, EPA provided copies of some documents (e-mails between EPA and third parties). It also directed the Plaintiff to documents that EPA had included on the docket for the proposed rulemaking, including certain select IPM and other modeling results. All other responsive documents were withheld as "constituting EPA deliberative rulemaking process." EPA's letter listed three general categories of those documents: 1) "EPA staff notes," 2) "[a]nalytical documents," and 3) "EPA internal correspondence." It provided no specificity about any of the withheld documents in these categories, such as author, date, subject matter, length, etc. Nor did it state the overall number of

pages withheld. Finally, it stated nothing about EPA's efforts to segregate exempt portions from non-exempt portions of the withheld materials.

17.     By letter dated July 15, 2004, Plaintiff filed a timely administrative appeal of EPA's partial denial of the FOIA request.

18.     By letter dated December 9, 2004, EPA issued what it termed "EPA's final determination on [the] appeal" (a copy of which is attached as Exhibit C). Among other things, this determination revealed that the category of withheld documents that EPA had identified as "analytical documents" in its previous response included the results of additional IPM runs under alternative scenarios (including "alternative MACT options" and "Hg trading option"), and economic and emissions analyses of the "Hg Trading Proposal." With regard to this and other withheld documents, EPA reaffirmed its refusal to provide any of the documents. EPA also specifically concluded that "the withheld information contains no reasonably segregable information that may be released."

19.     On February 3, 2005, EPA's Inspector General published a report of her investigation of the mercury rulemaking, in which she reported, among other things, that the rulemaking had been compromised by EPA senior management's bias in favor of the cap and trade alternative, and that EPA selected the IPM runs that favored that approach, and suppressed IPM runs that favored the MACT option. EPA Office of Inspector General, Report No. 2005-P-00003, *Additional Analyses of Mercury Emissions Needed Before EPA Finalizes Rules for Coal-Fired Electric Utilities*, Chapt. 2, (February 3, 2005), available at

http://www.epa.gov/oig/reports/2005/20050203-2005-P-00003-Gcopy.pdf. The report states:

> Documentation we reviewed indicated that EPA conducted at least three
> Integrated Planning Model (IPM) runs in order to reach the pre-determined target
> for national mercury emissions of 34 tons. The initial IPM run to try to reach the

6

34-tons target yielded a national emission of 29 tons (i.e., the IPM model indicated that mercury could be reduced from 48 tons to 29 tons). After changing the proposed MACT emission limits, a second IPM model yielded a national emission of 27 tons. While we were provided summary information about these two IPM model runs, they were not included in the EPA rulemaking docket.

OIG Report at 13.

20.     On or about March 7, 2005, the Government Accountability Office (GAO) made public its own report on EPA's NPRM cost-benefit analysis. GAO, Report # GAO-05-252, *"Observations on EPA's Cost-Benefit Analysis of Its Mercury Control Options,"* available at http://www.gao.gov/new.items/d05252.pdf. The GAO found "four major shortcomings" in EPA's analysis, including a failure to "consistently analyze options or provide an estimate of the total costs and benefits of each option," and a failure by EPA to "document some of its analysis or provide information on how changes in the proposed level of mercury control would affect the cost-and-benefit estimates for the technology-based option [*i.e.*, MACT], as it did for the cap-and-trade option." GAO Report, Summary. With regard to the second stated failure, GAO found:

> EPA officials responsible for the economic analysis told us that they analyzed two variations of the proposed technology-based option with more stringent mercury limits than the option included in the proposal, but the agency did not include this analysis in the documents supporting its economic analysis or in the public rule-making docket. This is inconsistent with EPA's analysis of the cap-and-trade option, in which it provided a range of costs and benefits associated with different levels of stringency. This omission is also at odds with OMB guidance directing agencies to conduct their economic analysis in accordance with the principles of full disclosure and transparency.

GAO Report at 11.

## IV. CAUSE OF ACTION

Violations of the Freedom of Information Act

21.    Plaintiff incorporates by reference and realleges the allegations contained in paragraphs 1 through 20 above as if fully restated herein.

22.    Section 552(a)(3) of the FOIA, 5 U.S.C. § 552(a)(3), and 40 C.F.R. §§ 2.101 and 2.111, require EPA to make agency records available upon request for public inspection and copying.

23.    The Plaintiff is a person entitled to request and receive records under FOIA § 552(a)(3).

24.    The withheld documents are records within the meaning of FOIA § 552(a)(3).

25.    The withheld documents are not exempted from production under FOIA § 552(b), in that:

      a.    EPA does not claim exemption under any provision of FOIA other than FOIA § 552(b)(5);

      b.    The withheld documents would be discoverable in litigation with EPA and do not constitute agency policy deliberation.

Among other things, as conceded by EPA in the NPRM and elsewhere, both the inputs and the results of IPM runs and economic and emissions analyses of different emissions control scenarios constitute factual data or expert forecasts upon which EPA proposes to base its policy decisions; and the assumptions made in developing inputs for the withheld IPM runs and analyses were publicly discussed with or proposed by the Working Group, and/or publicly disclosed on EPA's website. Moreover, the withheld documents cannot be withheld on the theory that they involve policy development the disclosure of which would interfere with or impede agency

8

decisionmaking, since they fall under the President's policy of full disclosure and transparency with regard to cost-benefit analysis.

26.    In withholding the documents, EPA has violated and continues to violate FOIA and its own regulations.

27.    EPA has acted arbitrarily and capriciously in withholding some results while publishing other results from the same analytical model, apparently based only upon whether the results support EPA's proposed rule.

## V. RELIEF REQUESTED

WHEREFORE, plaintiff respectfully requests this court to grant the following relief:

a.    EXPEDITE this matter on the court's docket to ensure prompt review;

b.    ORDER defendant to prepare an index of all documents withheld from plaintiff within 20 days of the court's order, consistent with the requirements of Vaughn v. Rosen, 484 F.2d 820 (D.C.Cir. 1973), cert. denied, 415 U.S. 977 (1974);

c.    ORDER defendant to demonstrate, consistent with its burden as set forth at 5 U.S.C. § 552(a)(4)(B), that the records requested by plaintiff are statutorily exempt from disclosure;

d.    CONDUCT an in camera inspection of the withheld documents to determine whether defendant's withholding of records is warranted by law;

e.    DECLARE that defendant's refusal to disclose the records requested by plaintiff is unlawful;

f.    DECLARE that EPA acted arbitrarily and capriciously by withholding the requested records, FOIA § 552(a)(4)(F);

g.    ORDER defendant to make the requested records available immediately to plaintiff;

h.    PERMANENTLY ENJOIN defendant in the future to provide copies of its analytical evaluations using IPM or like analytical models;

i.    ORDER defendant to pay plaintiff his costs of litigation, including but not limited to reasonable attorney fees and expenses, as authorized by FOIA § 552(a)(4)(E); and

j.    GRANT such other relief as the Court deems necessary and proper.

Respectfully submitted by,

William L. Pardee, BBO #389070
Assistant Attorney General
Environmental Protection Division
Office of the Attorney General
One Ashburton Place -- Rm. 1813
Boston, MA 02108
(617) 727-2200, ext. 2419

DATED: March 9, 2005

**Clean Air Act Advisory Committee**
**Permits/New Source Review/Air Toxics Subcommittee**
**Utility MACT Working Group**
**Suggested Additional IPM Analysis 06/18/02**

At the Clean Air Act Advisory Committee (CAAAC) Utility MACT Working Group meeting held on June 3, 2002, Larry Monroe (Southern Company) summarized a list of suggested changes to the EPA Base Case 2000 mercury modeling assumptions that were discussed at a May 30 workshop. These suggested changes included revised assumptions related to mercury control and regrouping of model run years. EPA agreed to consider these changes and also to provide the timeframes needed to implement any changes. EPA has not made any decisions on implementing the changes, but has provided below the timeframe needed to implement these changes and other analyses to address the concerns raised by the suggested changes should the decision be made to make the change. The timeframes provided below only include the time required to develop the capability to address the issues raised; they do not include the time required to rerun all the MACT scenarios. We have also indicated those changes we might propose to do.

The following are the changes suggested by Working Group members:
- Update activated carbon injection (ACI) cost and performance for cold-side ESP (no spray cooling, limited performance)
- Offer more menu choices (removal rates) for ACI
- Update SCR-FGD co-control
- Update base co-control emission modification factors (EMFs)
    - Separate EMFs of lignite-fired power plants from subbituminous power plants
    - Use latest ICR evaluations
- Drop SNCR effects on mercury
- Model run year timing

1) Update ACI cost and performance for cold-side ESP (no spray cooling, limited performance).

Updating the ACI costs to remove SC or add FF could be done in six weeks from the date of data availability. EPA is still in the process of examining the effectiveness of spray cooling in combination with ACI and the performance achieved by cold-side ESP/ACI combinations and does not propose to make this change at this time.

2) Offer more menu choices (removal rates) for ACI.

In the EPA Base Case 2000 only ACI with 80% removal rate is provided as a retrofit option. Providing additional menu choices such as ACI with 70% and 90% removals simultaneously within the model is expected to make the model too large to run. We suggest that we approach this issue by implementing the following:

Reduce existing model size – EPA Base Case 2000 provides SNCR technology options to every coal plant. We have noticed that SNCR technology is not a major control technology of choice

---

**EXHIBIT A**

in most of our analyses. Thus, this option could be dropped from the menu of compliance choices for coal plants larger than 100 MW. For similar reasons, we also suggest that gas reburning technology options not be provided to coal power plants.

An additional option to reduce model size is to reduce the number of run years from five to four. These model size reduction options could allow EPA to endogenously model ACI with two removal rates. EPA is proposing to a 60% removal and 90% removal for ACI. With the 90% removal option, we could include the addition of a pulse-jet fabric filter for units with hot-side or cold-side ESPs.

The above methodology would greatly improve the mercury modeling capability and reduce the possibilities of over compliance of mercury removal and address member's concerns regarding this issue. We estimate that it will take three months from the date when the data will be finalized to implement this approach. If there are still instances of over compliance of mercury removal, the extent of over compliance can be estimated offline based on model outputs.

2) Update SCR-FGD co-control; Update base co-control (separate lignite from subbituminous and use latest ICR evaluations); and drop SNCR effects on mercury.

Changes to mercury co-controls provided by existing or added NOx, $SO_2$, and PM controls can be implemented in a reasonable period of time. These will result in changes to EMFs and, hence, will influence the retrofit choices that need to be provided to a model plant. Retrofit choices might need to be added in IPM where none existed before (e.g., SCR+FGD may need an ACI choice). These options can be implemented within 4-6 weeks if the cost and performance of ACI does not change.

EPA is proposing to make the change to institute separate EMFs for lignite and subbituminous units and update the EMFs using the latest ICR evaluations. EPA is also proposing to update its SCR+FGD for other coals and its SNCR+FGD assumptions with the alternative emission modification factors (based on EIA mercury removal assumptions) provided in Appendix 5 of EPA's IPM documentation. EPA is not proposing to change its assumptions for SCR+FGD co-control for bituminous coals until ongoing testing at units with these configurations has been completed.

3) Model run year timing.

Model run years can be changed in a short period of time. It should be noted that because all the years mapped together take on the same dispatch characteristics (the average across the grouped years), it is usually advisable to place the output year in the middle of the years that are mapped together.

EPA is unclear whether this change to model runs will address the member's concerns. EPA believes that the members are concerned that annualizing total costs over a 30-year period is unrealistic. Limiting the run years does not address this issue; rather changing the book-life of a

retrofit used in the model addresses the issue and this is not being considered for change at this time.



# THE COMMONWEALTH OF MASSACHUSETTS
## OFFICE OF THE ATTORNEY GENERAL
ONE ASHBURTON PLACE
BOSTON, MASSACHUSETTS 02108-1598

THOMAS F. REILLY
ATTORNEY GENERAL

March 19, 2004

(617) 727-2200
www.ago.state.ma.us

**BY MAIL AND FAX (202) 566-2147**

FOIA Officer: Betty Lopez
Office of Environmental Information
United States Environmental Protection Agency
1200 Pennsylvania Avenue NW (2822T)
Washington, DC 20460

     Re:    <u>Freedom of Information Act Request</u>

Dear FOIA Officer Lopez:

     I hereby request, on behalf of the Commonwealth of Massachusetts, pursuant to the Freedom of Information Act, 5 U.S.C. § 552, records in the category listed below.  Please send a copy of the requested records to my attention at the Office of the Attorney General, 200 Portland Street, Boston, Massachusetts 02114.  We hereby also request a waiver of fees associated with this request, pursuant to 40 C.F.R. § 2.107(l), on grounds that disclosure of the requested information is in the public interest because it is likely to contribute significantly to public understanding of the operations or activities of the government and is not in the commercial interest of the requesters.

     We request the following "records," as that term is used in FOIA, 5 U.S.C. § 552(f):

     All records relating to the use of the Integrated Planning Model (IPM) in connection with the impact on the electricity generating and fossil fuel industries of proposed EPA standards for the emission of mercury from power plants, including but not limited to any communications about whether to undertake IPM modeling runs, and any discussions about the actual or anticipated results of such runs, and the results of any modeling runs actually performed (other than those results already disclosed to the Working Group for the Utility MACT formed under the Clean Air Act Advisory Committee Subcommittee for the Permits/New Source Reviews/Toxics).

     Thank you for your attention to this matter.  If you have any questions, please do not hesitate to contact me at (617) 727-2200, extension 3347.

                Sincerely,

                James R. Milkey
                Assistant Attorney General, Chief
                Environmental Protection Division

**EXHIBIT B**



**UNITED STATES ENVIRONMENTAL PROTECTION AGENCY**
WASHINGTON, D.C. 20460

DEC 19 2004

OFFICE OF
GENERAL COUNSEL

James R. Milkey, Esq.
Assistant Attorney General, Chief
Environmental Protection Division
The Commonwealth of Massachusetts
Office of Attorney General
1 Ashburton Place
Boston, Massachusetts 02108-1598

      Re: Freedom of Information Act Appeal HQ-RIN-01035-04-A

Dear Mr. Milkey:

      I am responding to your July 15, 2004, Freedom of Information Act ("FOIA") appeal. You appealed the June 10, 2004, decision of Sam Napolitano, Director, Clean Air Markets Division, Office of Air and Radiation ("decision") of the U.S. Environmental Protection Agency ("EPA" or "Agency"), to deny in part the request submitted to EPA by Massachusetts Attorney General Thomas F. Reilly on March 19, 2004. That request sought documents pertaining to additional Integrated Planning Model runs made in connection with the process of developing regulations to control the emission of mercury from power plants. The decision stated that the request was denied in part because documents, or portions of documents, were exempt from disclosure under Exemption 5 of the FOIA, 5 U.S.C. § 552(b)(5). You have appealed the manner in which EPA identified the withheld information alleging that the identification was "cursory and conclusory." You have asked that the Agency provide you "a detailed description of the portions of the documents it continues to withhold and the agency's reasoning for withholding them" and to disclose information clearly not meeting the criteria of Exemption 5.

      I have carefully considered your request, EPA's decision, and your appeal. For the reasons set forth below, I have determined that your appeal should be, and is, granted in part and denied in part.

      Exemption 5 of the FOIA, 5 U.S.C. § 552(b)(5), protects "inter-agency or intra-agency memorandums or letters which would not be available by law to a party other than an agency in litigation with the agency." The information withheld here under FOIA Exemption 5 is exempt from disclosure because, as shown on the attached index, it is intra-agency information generated by Agency staff and because it is protected by the deliberative process privilege.

EXHIBIT C

James R. Milkey, Esq.
FOIA Appeal HQ-RIN-01035-04-A
Page 2

Exemption 5 of the FOIA protects from disclosure a record, or portion of a record, that is subject to the deliberative process privilege. The deliberative process privilege protects documents that are both predecisional and deliberative. Here, the withheld information is protected by the deliberative process privilege because it reflects analyses being considered during EPA's rulemaking process. Release of the information would prematurely disclose proposed policies before they are finally adopted and cause public confusion by disclosing reasons and rationales that were not in fact ultimately the grounds for EPA's action. Therefore, I have determined that the withheld information is exempt from disclosure under Exemption 5 of the FOIA.

I have determined that the withheld information contains no reasonably segregable information that may be released. Disclosing any of the withheld factual information would reflect EPA's deliberations, because that information is inextricably intertwined with the deliberative material. In addition, the selection of certain factual information being used as part of the analyses is itself deliberative in nature. For these reasons, the withheld information is being withheld in its entirety.

You have argued that EPA provided an inadequate index pursuant to Vaughn v. Rosen, 484 F.2d 820 (D.C. Cir. 1973), cert. denied sub nom. Rosen v. Vaughn, 415 U.S. 977 (1974) in connection with its response. While I find that you were not provided an adequate description of the withheld information I also have determined that your argument asking for a Vaughn index to be without merit. Vaughn held that in litigation, agencies must provide information for each withheld document about the author, the date of the document, a description of the subject matter of the document, and an explanation as to why the document falls within the scope of the exemption that is claimed and the harm that would arise from its disclosure. Therefore, the Agency is not required to provide the same documentation in administrative responses as is necessary in the litigation context. See Crooker v. CIA, No. 83-1426, 1984 U.S. Dist. LEXIS 23177, at *3-*4 (D.D.C. Sept. 28, 1984). The court in Safecard Services, Inc. v. SEC, No. 84-3073, 1986 U.S. Dist. LEXIS 26467 at *5 (D.D.C. Apr. 21, 1986) stated that "[n]o court has held that a requesting party may compel production of a Vaughn [sic] index before completing its administrative appeal . . . ."

The Agency is not required to provide a Vaughn index until ordered by the court in any judicial action you may bring after you have exhausted all available administrative remedies. See Judicial Watch, Inc. v. Clinton, 880 F. Supp. 1, 11 (D.D.C. 1995), aff'd on other grounds, 76 F.3d 1232 (D.C. Cir. 1996). By statute, the denial of an initial FOIA request must inform the requester of the reasons for the denial, the right to appeal, and the name and title of each person responsible for the denial. 5 U.S.C. §§ 552(a)(6)(A)(I) and 552(a)(6)(C)(I). See also 40 C.F.R.§ 2.104(h) (EPA FOIA regulations also require an estimate of the volume of material denied). Please find attached the document entitled "Index of Documents Withheld - Freedom of

James R. Milkey, Esq.
FOIA Appeal HQ-RIN-01035-04-A
Page 3

Information Act HQ-RIN-01035-04." I have determined that this index meets the statutory criteria for informing a requester of what is being withheld and why during the administrative phase of a FOIA request.

This letter constitutes EPA's final determination on your appeal. In accordance with 5 U.S.C. § 552(a)(4)(B), you have the right to seek judicial review of this determination by instituting an action in the district court of the United States in the district in which you reside, or have your principal place of business, or in which the Agency records are situated, or in the District of Columbia.

Sincerely,

Byron R. Brown

Byron R. Brown
Assistant General Counsel
Finance and Operations Law Office

Attachment

cc:    HQ FOI Office
       Sam Napolitano, Director, Clean Air Markets Division, Office of Air and Radiation

# Index of Documents Withheld – Freedom of Information Act HQ-RIN-01035-04

<u>Categories of Documents Withheld</u>

1. EPA staff notes constituting EPA deliberative rulemaking process

- 25 pages of personal staff notes between January and December of 2003

2. Analytical documents constituting EPA deliberative rulemaking process

- IPM Run Outputs for two alternative MACT options
  - for each option, 5 computer output files, about 2 MB in total zipped size
- IPM Run Outputs for Hg trading option
  - 5 computer output files, about 2 MB in total zipped size
  - 2 spreadsheet files, about 6 MB in size for each file
- Economic Analysis of Hg Trading Proposal
  - 25 page document
  - 25 pages of presentation material
- Emissions analysis of Hg Trading Proposal
  - 10 page document
  - 30 pages of presentation material

3. EPA internal correspondence constituting EPA deliberative rulemaking process.

- about 175 staff e-mails between September of 2003 and April 2004

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

1. Title of case (name of first party on each side only) Thomas F. Reilly, as Attorney General of Massachusetts v.

U.S. Environmental Protection Agency

2. Category in which the case belongs based upon the numbered nature of suit code listed on the civil cover sheet. (See

local rule 40.1(a)(1)).

- [ ] I.    160, 410, 470, R.23, REGARDLESS OF NATURE OF SUIT.

- [✔] II.   195, 368, 400, 440, 441-444, 540, 550, 555, 625, 710, 720, 730,    *Also complete AO 120 or AO 121
            740, 790, 791, 820*, 830*, 840*, 850, 890, 892-894, 895, 950.        for patent, trademark or copyright cases

- [ ] III.  110, 120, 130, 140, 151, 190, 210, 230, 240, 245, 290, 310,
            315, 320, 330, 340, 345, 350, 355, 360, 362, 365, 370, 371,
            380, 385, 450, 891.

- [ ] IV.   220, 422, 423, 430, 460, 510, 530, 610, 620, 630, 640, 650, 660,
            690, 810, 861-865, 870, 871, 875, 900.

- [ ] V.    150, 152, 153.

**05 - 10450 RCL**

3. Title and number, if any, of related cases. (See local rule 40.1(g)). If more than one prior related case has been filed in
this district please indicate the title and number of the first filed case in this court.

4. Has a prior action between the same parties and based on the same claim ever been filed in this court?

YES [ ]    NO [✔]

5. Does the complaint in this case question the constitutionality of an act of congress affecting the public interest? (See
28 USC §2403)

YES [ ]    NO [✔]

If so, is the U.S.A. or an officer, agent or employee of the U.S. a party?

YES [ ]    NO [ ]

6. Is this case required to be heard and determined by a district court of three judges pursuant to title 28 USC §2284?

YES [ ]    NO [✔]

7. Do all of the parties in this action, excluding governmental agencies of the united states and the Commonwealth of
Massachusetts ("governmental agencies"), residing in Massachusetts reside in the same division? - (See Local Rule
40.1(d)).

YES [ ]    NO [ ]

A.    If yes, in which division do all of the non-governmental parties reside?

Eastern Division [ ]    Central Division [ ]    Western Division [ ]

B.    If no, in which division do the majority of the plaintiffs or the only parties, excluding governmental
agencies, residing in Massachusetts reside?

Eastern Division [ ]    Central Division [ ]    Western Division [ ]

8. If filing a Notice of Removal - are there any motions pending in the state court requiring the attention of this Court? (If
yes, submit a separate sheet identifying the motions)

YES [ ]    NO [ ]

(PLEASE TYPE OR PRINT)

ATTORNEY'S NAME  William L. Pardee, Assistant Attorney General

ADDRESS  1 Ashburton Place - Rm 1813, Boston, MA 02108

TELEPHONE NO.  617-727-2200 x 2419

(Coversheetlocal.wpd - 10/17/02)

05 - 10450 RCL

# CIVIL COVER SHEET

JS 44 (Rev. 11/04)

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet.  (SEE INSTRUCTIONS ON THE REVERSE OF THE FORM.)

## I. (a)  PLAINTIFFS

Attorney General of Commonwealth of Massachusetts; Reilly, Thomas F.

**(b)** County of Residence of First Listed Plaintiff   Suffolk
(EXCEPT IN U.S. PLAINTIFF CASES)

**(c)** Attorney's (Firm Name, Address, and Telephone Number)
William L. Pardee, Assistant Attorney General, Environmental Protection Div., 1 Ashburton Pl. - Rm. 1813, Boston 02108 -- 617-727-2200 x 2419

## DEFENDANTS

U.S. Environmental Protection Agency

County of Residence of First Listed Defendant
(IN U.S. PLAINTIFF CASES ONLY)

NOTE:  IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE LAND INVOLVED.

Attorneys (If Known)
U.S. Attorney General; U.S. Attorney

## II. BASIS OF JURISDICTION (Place an "X" in One Box Only)

☐ 1  U.S. Government Plaintiff

☒ 2  U.S. Government Defendant

☐ 3  Federal Question
(U.S. Government Not a Party)

☐ 4  Diversity
(Indicate Citizenship of Parties in Item III)

## III. CITIZENSHIP OF PRINCIPAL PARTIES (Place an "X" in One Box for Plaintiff and One Box for Defendant)
(For Diversity Cases Only)

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated or Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT (Place an "X" in One Box Only)

| CONTRACT | TORTS | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | ☐ 610 Agriculture | ☐ 422 Appeal 28 USC 158 | ☐ 400 State Reapportionment |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 620 Other Food & Drug | ☐ 423 Withdrawal | ☐ 410 Antitrust |
| ☐ 130 Miller Act | ☐ 315 Airplane Product Liability | ☐ 625 Drug Related Seizure of Property 21 USC 881 | 28 USC 157 | ☐ 430 Banks and Banking |
| ☐ 140 Negotiable Instrument | **PERSONAL INJURY** ☐ 362 Personal Injury - Med. Malpractice | | | ☐ 450 Commerce |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 320 Assault, Libel & Slander | ☐ 630 Liquor Laws | **PROPERTY RIGHTS** | ☐ 460 Deportation |
| ☐ 151 Medicare Act | ☐ 330 Federal Employers' Liability | ☐ 365 Personal Injury - Product Liability | ☐ 820 Copyrights | ☐ 470 Racketeer Influenced and Corrupt Organizations |
| ☐ 152 Recovery of Defaulted Student Loans (Excl. Veterans) | ☐ 340 Marine | ☐ 368 Asbestos Personal Injury Product Liability | ☐ 640 R.R. & Truck | ☐ 830 Patent | ☐ 480 Consumer Credit |
| ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 345 Marine Product Liability | ☐ 650 Airline Regs. | ☐ 840 Trademark | ☐ 490 Cable/Sat TV |
| ☐ 160 Stockholders' Suits | ☐ 350 Motor Vehicle | **PERSONAL PROPERTY** ☐ 370 Other Fraud | ☐ 660 Occupational Safety/Health | **SOCIAL SECURITY** | ☐ 810 Selective Service |
| ☐ 190 Other Contract | ☐ 355 Motor Vehicle Product Liability | ☐ 371 Truth in Lending | ☐ 690 Other | ☐ 861 HIA (1395ff) | ☐ 850 Securities/Commodities/Exchange |
| ☐ 195 Contract Product Liability | ☐ 360 Other Personal Injury | ☐ 380 Other Personal Property Damage | **LABOR** | ☐ 862 Black Lung (923) | ☐ 875 Customer Challenge 12 USC 3410 |
| ☐ 196 Franchise | | ☐ 385 Property Damage Product Liability | ☐ 710 Fair Labor Standards Act | ☐ 863 DIWC/DIWW (405(g)) | ☐ 890 Other Statutory Actions |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | ☐ 720 Labor/Mgmt. Relations | ☐ 864 SSID Title XVI | ☐ 891 Agricultural Acts |
| ☐ 210 Land Condemnation | ☐ 441 Voting | ☐ 510 Motions to Vacate Sentence | ☐ 730 Labor/Mgmt.Reporting & Disclosure Act | ☐ 865 RSI (405(g)) | ☐ 892 Economic Stabilization Act |
| ☐ 220 Foreclosure | ☐ 442 Employment | **Habeas Corpus:** | ☐ 740 Railway Labor Act | **FEDERAL TAX SUITS** | ☐ 893 Environmental Matters |
| ☐ 230 Rent Lease & Ejectment | ☐ 443 Housing/Accommodations | ☐ 530 General | ☐ 790 Other Labor Litigation | ☐ 870 Taxes (U.S. Plaintiff or Defendant) | ☐ 894 Energy Allocation Act |
| ☐ 240 Torts to Land | ☐ 444 Welfare | ☐ 535 Death Penalty | ☐ 791 Empl. Ret. Inc. Security Act | ☐ 871 IRS—Third Party 26 USC 7609 | ☒ 895 Freedom of Information Act |
| ☐ 245 Tort Product Liability | ☐ 445 Amer. w/Disabilities - Employment | ☐ 540 Mandamus & Other | | | ☐ 900Appeal of Fee Determination Under Equal Access to Justice |
| ☐ 290 All Other Real Property | ☐ 446 Amer. w/Disabilities - Other | ☐ 550 Civil Rights | | | ☐ 950 Constitutionality of State Statutes |
| | ☐ 440 Other Civil Rights | ☐ 555 Prison Condition | | | |

## V. ORIGIN (Place an "X" in One Box Only)

☒ 1 Original Proceeding
☐ 2 Removed from State Court
☐ 3 Remanded from Appellate Court
☐ 4 Reinstated or Reopened
☐ 5 Transferred from another district (specify)
☐ 6 Multidistrict Litigation
☐ 7 Appeal to District Judge from Magistrate Judgment

## VI. CAUSE OF ACTION

Cite the U.S. Civil Statute under which you are filing (Do not cite jurisdictional statutes unless diversity):
5 U.S.C. s. 552

Brief description of cause:
Suit to compel EPA to produce certain documents requested under FOIA and withheld by EPA.

## VII. REQUESTED IN COMPLAINT:

☐ CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23

DEMAND $

CHECK YES only if demanded in complaint:
JURY DEMAND:  ☐ Yes  ☒ No

## VIII. RELATED CASE(S) IF ANY
(See instructions):   JUDGE _____   DOCKET NUMBER _____

DATE  3/10/5

SIGNATURE OF ATTORNEY OF RECORD
W. Shaw Pardee  KPP 3/1c/15

**FOR OFFICE USE ONLY**

RECEIPT # _____   AMOUNT _____   APPLYING IFP _____   JUDGE _____   MAG. JUDGE _____