## UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| _____ | ) | |
| THOMAS F. REILLY, Attorney General | ) | |
| of the Commonwealth of Massachusetts, | ) | Civil Action No. 05-10450 RBC |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| UNITED STATES ENVIRONMENTAL | ) | |
| PROTECTION AGENCY, | ) | |
| | ) | |
| Defendant. | ) | |
| _____ | ) | |

## DEFENDANT'S MEMORANDUM OF LAW IN OPPOSITION TO PLAINTIFF'S CROSS-MOTION FOR SUMMARY JUDGMENT

Defendant, the Environmental Protection Agency ("EPA"), respectfully submits this memorandum of law in opposition to plaintiff's Cross-Motion for Summary Judgment. In that motion, plaintiff challenges EPA's withholding, pursuant to Exemption 5 of the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552(b)(5), of certain computer modeling runs that EPA generated prior to issuance of the Clean Air Mercury Rule ("CAMR"), using a model known as the Integrated Planning Model ("IPM"). Plaintiff argues (Pl. Mem. at 2) that EPA's "suppression of these modeling runs is contrary to federal law, Executive Order, and best practices guidance for agency rulemaking, as well as the agency's own past practices and prior conduct in this very rulemaking." Plaintiff also argues (Pl. Mem. at 3) that EPA has failed to "attempt a defense against the criticisms of its own Inspector General and the Government Accountability Office, both finding that EPA's failure to conduct additional modeling of the abandoned alternative, and its suppression of modeling results, depart from past practice as well as administration policy." Finally, plaintiff

asks this Court to make a finding that EPA's decision to withhold documents was arbitrary and capricious under 5 U.S.C. § 552(a)(4)(F).

None of these arguments has merit.  As demonstrated in our opening memorandum and explained more fully below, EPA properly withheld the modeling runs at issue under the FOIA because (1) the runs were not relied upon by EPA in promulgating the CAMR; (2) the runs are pre-decisional because development of the CAMR, including IPM analysis, was on-going at the time of the runs; and (3) each of the IPM runs that are being withheld, in their choice of specific variables and use of certain projections, reveal issues that EPA considered important in the rulemaking process, and therefore could provide clues to the agency's deliberations prior to rulemaking, could compromise future EPA deliberations, and could cause public confusion about the reasons behind EPA's decision-making process.  Courts have consistently held that agencies may properly withhold factual information under Exemption 5 if the release of that information would be tantamount to revealing the agency's internal deliberations.  See, e.g., Quarles v. Dept. of the Navy, 893 F.2d 390, 392-93 (D.C. Cir. 1990); National Wildlife Federation v. U.S. Forest Service, 861 F.2d 1114, 11121 (9th Cir.1988); Lead Industries Ass'n, Inc. v. OSHA, 610 F.2d 70, 84-85 (2nd Cir. 1979) (Friendly, J.).  That is precisely the case here.

Plaintiff's arguments relating to the Clean Air Act also miss the mark.  Section 307(b) of the Clean Air Act, 42 U.S.C. § 7607(b), expressly provides that any challenge to a nationally applicable final regulation issued pursuant to the Clean Air Act -- like CAMR -- can only be heard in the United States Court of Appeals for the District of Columbia Circuit.  Cognizant of this statutory requirement, plaintiff has already filed suit in the D.C. Circuit challenging the final CAMR.  Plaintiff cannot use this FOIA lawsuit as a means to collaterally attack the final CAMR.  Rather, any

procedural and substantive challenges that Plaintiff may have to the final CAMR, including any challenges to the record that EPA has already certified to the court as the record for judicial review of the final rule, can be heard only in the D.C. Circuit. See 42 U.S.C. § 7607(b) & (d).

Plaintiff's reliance on Executive Order 12866 and the Office of Management and Budget's ("OPM") "Best Practices Guidance" interpreting that Executive Order also is misplaced. Executive Order 12866 expressly states that it is intended only to improve the internal management of the Federal Government and does not create any substantive or procedural rights or benefits, enforceable at law or equity, against the United States or its agencies or instrumentalities. See Executive Order No. 12866, § 10; 58 Fed. Reg. 51,735, 51,744 (Sept. 30, 1993). Consequently, plaintiff has no right to challenge EPA's compliance with Executive Order 12866, and EPA's alleged non-compliance with the Executive Order and the OMB "Best Practices Guidance" cannot be invoked to defeat a valid claim of withholding under the FOIA.

Finally, plaintiff's request that this Court find that EPA has acted arbitrarily and capriciously under 5 U.S.C. § 552(a)(4)(F) is both jurisdictionally and substantively defective. For all these reasons, plaintiff's cross-motion for summary judgment should be denied.

**ARGUMENT**

**I.     EPA PROPERLY INVOKED EXEMPTION 5**

Plaintiff contends that this Court should order EPA to produce documents 115 and 116, which consist of IPM runs for two alternative maximum achievable control technology ("MACT") options and for the Hg Trading option, respectively, arguing (Pl. Mem. at 3) that "FOIA does not

permit agencies to suppress facts it would rather not consider, or have the public consider." That argument lacks merit.[1]

1. As a general rule, courts have typically required disclosure of "factual material" inasmuch as such material would "generally be available for discovery," <u>EPA</u> v. <u>Mink</u>, 410 U.S. at 87-88, and "because the prospect of disclosure is less likely to make an advisor omit or fudge raw facts, while it is likely to have just such an effect on 'materials reflecting deliberative or policymaking processes.'" <u>Quarles</u> v. <u>Dept. of the Navy</u>, 893 F.2d 390, 392 (D.C. Cir. 1990) (quoting <u>EPA</u> v. <u>Mink</u>, 410 U.S. at 89). But this is not an absolute rule. Even where responsive information is found to be factual, courts have held material to have been properly withheld pursuant to Exemption 5 where disclosure "would expose an agency's decisionmaking process in such a way as to discourage candid discussion within the agency and thereby undermine the agency's ability to perform its functions." <u>Dudman Communications Corp.</u> v. <u>Dept. of the Air Force</u>, 815 F.2d 1565, 1569 (D.C. Cir. 1987).

The D.C. Circuit's decision in <u>Quarles</u> is instructive. In that case, the plaintiff challenged the Navy's withholding of certain cost estimates prepared in the course of the Navy's selection of homeports for ships in a new battleship group, contending that the cost estimates could not be

---

[1] As a preliminary matter, we are compelled to respond to plaintiff's misuse of language. It is beyond peradventure, of course, that the FOIA does not permit agencies to "suppress" facts, nor have we made any suggestion to that effect. To the contrary, the legal question presented by this case is whether EPA has properly withheld the requested documents pursuant to Exemption 5 of the FOIA, a statute that was duly enacted by Congress, and it is to that question that we have presented argument and supporting documentation. Plaintiff's attempt to obscure this issue by characterizing EPA's position as an attempt to "suppress" information thus is nothing more than a rhetorical device masquerading as a legal argument, and should be given the weight that it deserves, which is none.

withheld under the deliberative process privilege because they were fact.  The D.C. Circuit rejected

that claim, reasoning, in pertinent part, as follows:

> Numbers have a surface precision that may lead the unsophisticated to think of them as fixed, and of course some are—Waterloo <u>was</u> fought in 1815.  But cost estimates such as these are far from fixed, as anyone knows who has had two contractors bid on a home improvement or has compared budget estimates with final costs of a government project.  They derive from a complex set of judgments—projecting needs, studying prior endeavors and assessing possible suppliers.  They partake of just that elasticity that has persuaded courts to provide shelter for opinions generally.
>
> Quarles argues nonetheless that the Navy has not shown that harm to the decisionmaking process would result from disclosure of the estimates.  This claim must fail.  The district court expressly found that disclosure of the information sought 'could chill discussion at a time when agency opinions are fluid and tentative. * * *
>
> We need not stretch our imaginations to vindicate the district court's conclusion.  If a study team found significant potential savings in deploying the battleship group at a finalist port otherwise deemed satisfactory, disclosure of this finding surely would tend to undermine the acceptability—among taxpayers—of forsaking that option.  Yet the Navy might have reasons for rejecting the seemingly cheaper option, perhaps strategic, perhaps political.  Anticipating this scenario, high officials might be inclined either not to call for cost estimates, or to call only for fuzzy ones expressed as wide ranges.  The increased tendency to fudge would increase the sloppiness (or decrease the precision) of government decisionmaking.  In an ideal world not only officials but also the public would receive such analyses.  But the deliberative process exemption rests on the premise that if both (nominally) can get them, neither will; too many analyses will be stillborn or wishy-washy.
>
> Disclosure of the estimates <u>before</u> decision would pose additional risks.  Such a release might unleash forces that would effectively <u>preclude</u> any alternative other than the one supported by the cost projections, just as deliberate leaks often skew the decisionmaking process.  Again, the prospect of such disclosure would increase the incentives to lower officials' fudging such estimates, or to higher-ups' not even calling for them.

893 F.3d at 392-93 (emphasis in original, internal citations omitted).

To the same effect is the Ninth Circuit's decision in <u>National Wildlife Federation</u>.  In that

case, the Ninth Circuit upheld the decision by the United States Forest Service to withhold, *inter*

*alia*, cost-benefit analyses of certain proposed forest plans, holding that, "[w]hile these opinions might be characterized as opinions on facts or the consequences of facts, such a distinction, as we discussed previously, is not the touchstone for determination of the applicability of exemption 5. As long as these opinions reveal the issues that the Forest Service considers important and provide telling clues as to the Forest Service's proposed course of action in addressing the conflicting demands on the Forest's resources, they are as much a part of the deliberative process as opinions on pure matters of law or policy." 861 F.2d at 1121.

Likewise, in <u>Lead Industries Ass'n</u>, the Second Circuit, in an opinion authored by Judge Friendly, rejected an absolute fact/opinion distinction, holding that: "We think the proper rule, consistent with <u>Mink</u> and the other Supreme Court cases and most of the lower court cases * * * is this: If the factual materials are 'inextricably intertwined' with policy making deliberative information that is entitled to protection under Exemption 5, the factual materials themselves fall within the exemption. Disclosing factual information from the [consultants'] summaries would reveal the deliberative process of summarization itself by demonstrating which facts in the massive rule-making record were considered significant by the decisionmaker and those assisting her." 610 F.2d at 85 (internal citations omitted).

EPA's withholding of documents 115 and 116 falls comfortably within this established body of precedent. As we demonstrated in our opening memorandum, in developing the CAMR, EPA conducted a number of IPM runs to evaluate both the MACT and cap-and-trade approaches, including as a means of evaluating the cost impacts of the proposed rule. <u>See</u> 69 Fed. Reg. 4652 (Jan. 30, 2004); Declaration of Samuel Napolitano ("Napolitano Decl.") ¶¶ 5-6. Each of the IPM runs upon which EPA relied in developing CAMR was disclosed in Docket No. OAR-2002-0056,

and is available for review by the general public on EPA's website at (http://docket.epa.gov/edkpub/do/EDKStaffCollectionDetailView?objectId=0b0007d4800f14fa). By contrast, the IPM runs that are being withheld were pre-decisional and were not relied upon by EPA in developing CAMR. <u>See</u> Napolitano Decl. ¶ 17; EPA <u>Vaughn</u> Index at 68-69. More importantly, each of the IPM runs in question, in its choice of specific variables and use of certain projections, reveals issues that EPA considered important in the rulemaking process, and the release of these runs therefore provides clues to the Agency's deliberations prior to rulemaking, could compromise future EPA deliberations, and could cause public confusion about the reasons behind EPA's decision-making process. <u>See</u> Napolitano Decl. ¶ 17; EPA <u>Vaughn</u> Index at 68-69. These documents therefore were properly withheld under Exemption 5. <u>See, e.g.</u>, <u>Quarles</u>, 893 F.2d at 392-93; <u>National Wildlife Federation</u>, 861 F.2d at 1121; <u>Lead Industries Ass'n</u>, 610 F.2d at 84-86.

    **2.** None of plaintiff's arguments to the contrary is persuasive. Plaintiff devotes a considerable amount of his memorandum (Pl. Mem. at 3-12, 15-16) to a critique of the CAMR -- a final Clean Air Act regulation that EPA signed in March 2005. <u>See</u> 70 Fed. Reg. 28,606 (May 18, 2005). Plaintiff also argues that EPA's decision to withhold documents 115 and 116 runs afoul of Executive Order 12866 and the OMB "Best Practices Guidance" interpreting that Executive Order. The simple answer to these assertions is that this FOIA case is not the appropriate venue in which plaintiff may challenge CAMR under the Clean Air Act. Nor is EPA's compliance with Executive Order 12866 a proper subject of judicial review.

    Section 307 of the Clean Air Act sets forth the procedure by which an affected party may obtain judicial review of, among other things, the promulgation or revision of regulations issued under Section 111 of the Act. <u>See</u> 42 U.S.C. § 7607(d)(1)(C). Any challenge to a nationally

applicable regulation, like the regulation at issue here -- which EPA finalized on March 15, 2005 -- must be brought in the United States Court of Appeals for the District of Columbia Circuit. See 42 U.S.C. § 7607(b). And, indeed, plaintiff has a filed a petition for review challenging the final CAMR pursuant to section 307(b) of the Clean Air Act, and that petition is currently pending in the D.C. Circuit. See State of New Jersey, et al. v. EPA, Nos. 05-1162 and consolidated actions. If plaintiff wants to challenge the record for judicial review that EPA has certified in support of the final CAMR, it must do so in the D.C. Circuit. Section 307(d)(7)(A) of the Clean Air Act, 42 U.S.C. § 7607(d)(7)(A), prescribes the record for judicial review of any final section 111 regulation issued pursuant to section 307(d), like CAMR. But what plaintiff may not do is use this FOIA lawsuit as a vehicle to collaterally attack the final CAMR on either procedural or substantive grounds. See 2 U.S.C. § 7607(b) & (d); see also Lead Industries, Ass'n, 610 F.2d at 73, 86 (in case where the plaintiff's "avowed objective in seeking agency records is to utilize them in prosecuting a petition in another circuit to review a rule promulgated by the agency," holding that "[i]t may indeed facilitate [the plaintiff's] attack on the standards if it could know in just what respects the Assistant Secretary departed from the staff reports she had before her. But such disclosure of the internal workings of the agency is exactly what the law forbids.") (emphasis added).

Plaintiff's reliance (Pl. Mem. at 6-7, 17-18) on Appalachian Power Co. v. EPA, 249 F.3d 1032 (D.C. Cir. 2001), therefore is wholly misplaced. That case was not a FOIA case, but rather a petition for review challenging a Clean Air Act rule promulgated by the EPA. That rule required many nitrogen oxide emitting facilities in several Midwestern and Southern states to conform to emission limits set by the EPA. See id. at 1032. The D.C. Circuit heard both procedural and substantive challenges to the rule, including petitioners' claims that they lacked an opportunity to

comment on certain issues central to the rulemaking. See id. at 1054-55. The D.C. Circuit addressed all of the petitioners' challenges, including substantive challenges to EPA's reliance on IPM and various procedural challenges. The D.C. Circuit did not, however, discuss the propriety of withholding materials under FOIA, including Exemption 5. Thus, contrary to Plaintiff's assertion, Appalachian Power has no bearing on the legal question presented in this case, which involves application of the FOIA, not the Clean Air Act, and confirms that plaintiff's challenges to the CAMR cannot be heard in this Court.

Plaintiff's reliance on Executive Order 12866 and the OMB "Best Practices Guidance" interpreting that Executive Order also is misplaced; neither issue is a proper subject of judicial review. Executive Order 12866 expressly provides that:

> Nothing in this Executive order shall affect any otherwise available judicial review of agency action. This Executive order is intended only to improve the internal management of the Federal Government and does not create any right or benefit, substantive or procedural, enforceable at law or equity by a party against the United States, its agencies or instrumentalities, its officers or employees, or any other person.

Executive Order No. 12866 § 10; 58 Fed. Reg. 51,735, 51,744 (Sept. 30, 1993). Thus, by its terms, Executive Order 12866 creates no rights enforceable at law or equity against EPA. See Associated Fisheries of Maine, Inc. v. Daley, 954 F. Supp. 383, 390 (D. Me.) (holding that "there is no private cause of action" under Executive Order 12866), aff'd, 127 F.3d 104 (1st Cir. 1997); Trawler Diane Marie, Inc. v. Brown, 918 F. Supp. 921, 932 (E.D.N.C. 1995) (holding that "plaintiff has no right of action to challenge the Secretary's compliance with E.O. 12866), aff'd, 91 F.3d 134 (4th Cir. 1996) (Mem.); Teledyne, Inc. v. United States, 50 Fed. Cl. 155, 191 (Ct. Fed. Cl. 2001) ("Executive Order 12,866, by its plain terms, precludes judicial review of an agency's compliance with its directive."), aff'd, 316 F.3d 1366 (Fed. Cir.), cert. denied, 540 U.S. 1068 (2003). It necessarily

follows that neither Executive Order 12866 nor the OMB "Best Practices Guidance" can be invoked as a ground to defeat a valid claim of withholding by EPA.

Plaintiff also misses the mark in asserting (Pl. Mem. at 17) that the cases upon which we relied in our opening memorandum "do not assist EPA" because "they deal with documents quite dissimilar to IPM runs."  To the contrary, each of these cases supports EPA's invocation of the deliberative process privilege in this case.  As with the cost estimates at issue in Quarles, the IPM runs at issue in this case were used as a means of evaluating the cost impacts of the proposed rule, and similarly derive from a complex set of judgments that "partake of just that elasticity that has persuaded courts to provide shelter for opinions generally."  893 F.2d at 392-93.  As in National Wildlife Federation, the IPM runs at issue in this case would reveal the issues that EPA considers important and provide telling clues as to EPA's course of action, and therefore are "as much a part of the deliberative process as opinions on pure matters of law or policy."  861 F.2d at 1121.  And, as in Lead Industries Ass'n, the IPM runs at issue in this case "would reveal the deliberative process of summarization itself by demonstrating which facts in the massive rule-making record were considered significant by the decisionmaker and those assisting her."  610 F.2d at 85.

Finally, plaintiff errs in suggesting (Pl. Mem. at 17) that this case is akin to Carter v. U.S. Dept. of Commerce, 307 F.3d 1084 (9th Cir. 2002), in which the Ninth Circuit held that statistically adjusted census data was not predecisional and was not deliberative.  First, plaintiff has not challenged our showing in this case that the IPM runs that have been withheld were predecisional. Second, and more importantly, the Ninth Circuit in Carter "recognize[d] that numbers can constitute deliberative material where they represent opinions and subjective judgments created to assist in the decision-making process, or where they would otherwise so expose that process."  Id. at 1091 & n.6

(citing, e.g., Quarles, 893 F.2d at 392-93, and National Wildlife Federation, 861 F.2d at 1121). The

Ninth Circuit found that the adjusted census data in question did not fall under this rubric based on

that court's earlier decision in Assembly of California v. U.S. Dept. of Commerce, 968 F.2d 916 (9th

Cir. 1992), in which the Court of Appeals held that the adjusted data would not reveal anything about

the decisions that the Secretary had to make, nor the process informing that judgment. See 307 F.3d

at 1091 (quoting and applying Assembly of California, 968 F.2d at 922). In this case, by contrast,

EPA has shown that, in its choice of specific variables and use of certain projections, each of the

IPM runs in question would reveal issues that EPA considered important in the rulemaking process

and therefore provide clues to the Agency's deliberations prior to rulemaking, as well as compromise

future EPA deliberations and cause public confusion about the reasons behind EPA's decision-

making process. See Napolitano Decl. ¶ 17; EPA Vaughn Index at 68-69.

Moreover, it bears emphasis that the Ninth Circuit's decisions in Carter and Assembly of

California are the subject of an existing circuit split. The Eleventh Circuit, in reviewing the very

same adjusted census data that was at issue in Assembly of California reached the exact opposite

conclusion, holding that the Secretary of Commerce had properly withheld the data under Exemption

5:

> The adjusted numbers in our case were a recommendation—nothing more
> than one rejected recommendation in a process which ultimately led to the Secretary
> accepting a different recommendation as his final decision. The advice may have
> been in the form of numbers but they were no more 'facts' than were the numbers in
> Quarles. We therefore conclude that the adjusted census data should be characterized
> as opinion.

Florida House of Representatives v. U.S. Dept. of Commerce, 961 F.2d 941, 950 (11th Cir. 1992).

Hence, not only is Carter distinguishable from this case for the reasons that we have explained

above, that decision itself is in conflict with position taken by the Eleventh Circuit (which, in our view, is the better-reasoned approach), and therefore is hardly the dispositive precedent that plaintiff suggests.

**3.** Inasmuch as we have shown that EPA properly invoked Exemption 5 with respect to documents 115 and 116, plaintiff's request that this Court order EPA to "reconsider and clarify" its claim of exemption with respect to documents 1-113 and 117-120 falls away. As plaintiff acknowledges (Pl. Mem. at 20), that request is premised on a ruling by this Court that EPA improperly withheld documents 115 and 116.

## II. PLAINTIFF'S REQUEST THAT THIS COURT MAKE A FINDING THAT EPA ACTED ARBITRARILY AND CAPRICIOUSLY IS JURISDICTIONALLY AND SUBSTANTIVELY FLAWED

In his cross-motion for summary judgment, plaintiff does not simply challenge EPA's invocation of Exemption 5, he also asks that this Court find that agency personnel acted arbitrarily and capriciously under 5 U.S.C. § 552(a)(4)(F), which would require that EPA's handling of plaintiff's FOIA request be investigated by the Office of Special Counsel. In support of this request, plaintiff asserts (Pl. Mem. at 19-20) that "[a]ny suggestion that the agency would prefer to bury relevant facts rather than deal with them forthrightly undercuts its credibility, and so should be thoroughly investigated." As we now show, that request is both jurisdictionally and substantively flawed.

Subsection (a)(4)(F) of the FOIA, as amended, provides, in pertinent part, that:

> Whenever the court orders the production of any agency records improperly withheld from the complainant and assesses against the United States reasonable attorney fees and other litigation costs, and the court additionally issues a written finding that the circumstances surrounding the withholding raise questions whether agency personnel acted arbitrarily or capriciously with respect to the withholding, the [United States

-12-

> Office of] Special Counsel shall promptly initiate a proceeding to determine whether disciplinary action is warranted against the officer or employee who was primarily responsible for the withholding.

5 U.S.C. § 552(a)(4)(F); see 5 U.S.C. § 1211 (2000) (establishing "Office of Special Counsel" independent of the Merit Systems Protection Board). Hence, there are two distinct jurisdictional prerequisites before a court can make a finding that an agency acted arbitrarily and capriciously in withholding records, thereby warranting a Special Counsel investigation: (1) the court must order the production of agency records found to be improperly withheld; and (2) the court must assess against the United States (or one of its agencies) attorney's fees and litigation costs.

In this case, this Court has neither ordered the production of agency records nor assessed against EPA attorney's fees and litigation costs. Moreover, even were this Court to order the production of documents 115 and 116, plaintiff's request that this Court make a finding that EPA acted arbitrarily and capriciously is jurisdictionally deficient because this Court has not assessed against EPA attorney's fees and litigation costs, nor has plaintiff moved for attorney's fees or costs pursuant to 5 U.S.C. § 552(a)(4)(E). It is striking that plaintiff would make such an extraordinary request, which would potentially result in a Special Counsel investigation not of the agency as a whole, but of one or more individual EPA employees, without satisfying the bare jurisdictional prerequisites provided for in the statute which he is invoking.

Plaintiff's request also is flawed on the merits. A written finding that EPA personnel acted arbitrarily and capriciously in withholding documents 115 and 116 essentially requires a showing of "malice or bad faith," Lovell v. Alderete, 630 F.2d 428, 431 (5th Cir. 1980); no such showing has been made in this case. To the contrary, and as was the case in Defenders of Wildlife v. U.S. Dept. of Interior, 314 F. Supp.2d 1, 22 n.24 (D.D.C. 2004), EPA has "offered extensive affidavits that

-13-

explain their response to plaintiff's FOIA request" and plaintiff has "failed to point to evidence in the record that defendant[] acted arbitrarily and capriciously."   In particular, although plaintiff challenges EPA's withholding of documents 115 and 116, he concedes (Pl. Mem. at 19) that he is not contesting EPA's claim of exemption with respect to document 114, nor is he contesting EPA's claim of attorney-client privilege with respect to portions of documents 1, 21, 24, 56, 95, 102, 104, and 105-108.  And, even with respect to documents 1-113 and 117-120, plaintiff only requests (Pl. Mem. at 20) that this Court order EPA "to reconsider and clarify its claim of exemption" in light of its ruling with respect to documents 115 and 116.  Hence, viewed in its totality, this case hardly involves the kind of "malice or bad faith" that would warrant a finding of arbitrary and capricious agency action under subsection (a)(4)(F).

Indeed, as the United States District Court for the District of Columbia reasoned in Defenders of Wildlife in declining to make a finding under subsection (a)(4)(F) despite ordering the production a document that had been improperly withheld, "[i]f plaintiff' allegations were sufficient, any time a defendant conducted an inadequate search or was required to turn over previously withheld documents, a written finding under § 552(a)(4)(F) would be warranted.  The Court is unwilling to adopt that approach."  314 F. Supp.2d at 22 n.24.  This Court, too, should follow this sensible approach, and deny plaintiff's baseless invitation to make a finding under subsection (a)(4)(F).

**CONCLUSION**

For the foregoing reasons, EPA respectfully requests that this Court deny plaintiff's cross-motion for summary judgment.

Respectfully submitted,

MICHAEL J. SULLIVAN
United States Attorney

By: /s/ Mark T. Quinlivan
MARK T. QUINLIVAN
Assistant U.S. Attorney
John Joseph Moakley U.S. Courthouse
1 Courthouse Way, Suite 9200
Boston, MA 02210
617-748-3606

Dated: October 20, 2005